and others. Patrick Fagan is here for the appellants, PF Holdings and others. Paul L. Beals Jr. is here for the appellee, HDI Global, and Nancy Wrigley is here for appellee, National Union Fire Insurance. Mr. Fagan, you may begin your argument. Good morning. I'm here to face the court. In support of improper fact findings and summary judgment and misapplied Georgia law on contracts, insurance, and waiver, each of these areas requires reversal. I'll start with a roadmap. First, I'll discuss HDI's breaches and election of coverage, then arbitration and waiver of any such arbitration condition in the policies, and finally, failure to settle. I'll refer to PF Holdings and Schoolhouse as PF Schoolhouse for these insureds and the named insureds as such. First, HDI's breaches in January 2020. At least three pieces of evidence confirm a jury issue whether HDI renounced its policy obligations and denied coverage and defense to PF Schoolhouse in January 2020. First, the January 3rd email from HDI's adjuster to the named insured counsel that the carrier does not insure PF Schoolhouse, so we will not provide a defense to them. Testimony from HDI's adjuster confirms this email was to notify PF Schoolhouse that HDI would not defend them. That's docket 6748, the golden statute, pages 40 to 42. Thus, HDI's appointed counsel told these insureds, get an attorney. I don't represent you. That's from Mr. Peretz's deposition, docket 6748. Doesn't Georgia law put a requirement on the potential insureds to request coverage? Now maybe you say, well, that's silly. They already said they're not going to do it, but isn't there a requirement that these parties would do so? So ordinarily, additional insurers do have an election requirement, which I'll discuss the flexible fact-based inquiry there and why election may not be required. But here, the declaration and what was communicated to the insureds was, you're not even insured. That's a repudiation, and so you can't rely on a condition in the contract after you've repudiated your obligations. And frankly, in the real world, when an insured is told you're not an insured, it's futile for them to make an election, or at least a jury could so find. But why wouldn't they just say, yes, I am, and you should provide coverage? That's not actually that high of a burden, is it? Well, that's shifting the risk of the insurer's actions to the insured's. The insurer bears the risk if it or its adjuster looks before it leaps. That's Geico v. Whiteside from the And so if the insurance company has decided to take the position that there's no obligation, they've waived any other positions, conditions in the policy to say, or under the law, that, oh, sorry, actually, we don't have an obligation to you. That's the traveler's case that we cited from 1935 as well. But there's other evidence here, Your Honor, that HCI's adjuster also told private counsel for PF Schoolhouse that coverage was being denied because they were not named insureds. But it's undisputed that PF and Schoolhouse were insureds under the policy, and even HCI's 30B-6 testified that it had a duty to defend these insureds by late December 2019 before they took this position. That's docket 67-47, the side deposition at 69-72. So there is evidence that HCI repudiated its policy obligations on unqualified terms, and that creates a fact issue under the Jones v. Solomon case. So that traveler's case, the HCI argues that it's a case from 1937. It's a case from before the Georgia courts adopted this express request rule. What do you say about that? The concept of traveler still applies because they're talking about a condition. Election of coverage is a condition. And so if you put your behavior, what the insurance company does on the idea that there's no obligation at all, and you're not insured, I think that waives a condition, whether it's in the policy or it's a judge-made condition, and that's the Georgia statute we cite, that you can waive any rights available to you. But do you have a case that says that that's how that works? Not as to election of coverage, but let me speak to election of coverage. It's a flexible fact-based inquiry. And at most, what's required is for the insureds to forward the complaint along to the insurance company or someone acting on its behalf to indicate coverage is expected. And there is evidence here that PF Schoolhouse forwarded claimant's demand to their broker who forwarded it on to HDI. And there's also evidence by which a jury could find HDI knew these insureds expected coverage. Why else did they repeatedly direct them to get their own attorney? And why did the 36 admit a duty to defend these insureds? Also the Leventhal case and its progeny, such as BBL McCarthy, recognized that no express election is required. And that's where there's proof of actual notice, joined interests with named insurers, which we certainly have here, and no cognizable prejudice to the insurer. But even after the insureds made an express election here in January of 2020, HDI continued to breach its policy obligations. It delayed in providing a defense in February 2020, and it ultimately repudiated its policy obligations again in March 2020. The February 21 email from Docket 67 at 32 did not provide a defense or reserve rights, as the district court wrongly found. It asked for a call and mentioned unknown authority to accept a tender. HDI then waited until the critical extended answer deadline just before it to demand new terms not in the policy as a condition of the defense. Wasn't the answer deadline extended, though, to March 11th? It was. I'm speaking to March 10th, Your Honor. March 10th bilateral letter at Docket 67. That's when the insurer provided the letter that made the defense expressly subject to new terms that were not in the policy. Can you be very specific about which of the terms in that letter were new and were not included in the policy? Yeah, these insureds had to agree they were only, quote, potential insureds. That's at pages 4 and 11 of Docket 67-36. There was also language that insurance company could use to claim no waiver or breaches from its prior conduct. That's, for instance, at page 9 of that same Docket reference. The insured had to agree that nothing, and I'm paraphrasing, in HDI's continuing investigation and evaluation of this matter shall constitute a waiver or estoppel. Now, of course, HDI has claimed that they've been investigating this matter since October of 2019. So any lawyer worth his salt is not going to allow his client to sign that and waive their rights that they have accrued up to that point as an obligation of the defense at page 5. How are those different than kind of the ordinary reservation of rights? I mean, I understand that these types of reservations of rights, at least some sorts of reservations of rights, are typical in this context. How are these different than what is typical? If I were not sure if this was an insured party, then I think I would like to say just because I'm defending you doesn't mean that I'm conceding that I'll eventually owe that. Why is this different than what's ordinary in this context? Because of the language that was used and, in particular, how that language married up to a potential waiver, agreed waiver, of the insurer's prior conduct. And to further answer both this question and your prior question, at page 5, it said that HDA may continue to investigate without such actions or any action or inaction constituting waiver or estoppel. So HDI wasn't just saying, hey, we're going to provide you a defense and by providing you a defense, we're not waiving our rights. It is, we will provide you a defense, but only if you agree that you're only a potential insured and these broad terms that would capture everything they had done up to that point. And then, of course, Richmond instructs that the insured doesn't have to accept the bilateral reservation because the insured doesn't have to risk prejudice from the bilateral reservation process. That's Richmond at pages 218 to 220 of the Georgia app reference. And, in fact, the insured can say, I'm not going to sign that. And then the insurer has to go to the unilateral reservation process. They need to do that before the extended answer deadline. That didn't happen here. They waited until the extended answer deadline and then with a, you know, this is civil litigation, but the pointy end of a gun, this is a critical moment. You have to accept these conditions. And then the insurer doubled down on that. On March 13th, the insurer sent a letter that said, docket 6738 at 4, it threatened a loss of coverage if the insurers did not cooperate with HDI's extra contractual demands. So it was worse for the appellants. That creates a jury issue as to repudiation by these new ultimatums. Can I ask you a question about the way reservation of rights is supposed to work under Georgia law? So you say in your brief that, and you cite some cases for this, that Georgia follows the minority rule that says that if an insurer reserves rights, then the insured has the ability to just defend themselves and reject the defense. Am I right in understanding that's your position? Yes. I'm not sure about minority rule, but the Richmond case provides that the insurer, or excuse me, the insured does not have to accept or the unilateral reservation. And the course of action that's required then is for the insurer to seek immediate declaratory relief, which did not happen here. And that's important. Well, I guess that's what I'm kind of confused about. Like, so if that's the rule, which let's assume it is, that you don't have to accept a defense under reservation of rights, what effect does that have on the contract going forward? Does that relieve you from any other provisions of the contract? Or what's your position on that? So our position is that we're relieved of conditions under the contract by nature of the breaches that HDI made continuously across January, February, and March. No insured should have to go through that process, particularly with a multi-million dollar lawsuit pending in those two months. So here, particularly the breaches show that we didn't have to accept. Yeah. Let's just assume that there was no breaches. I mean, let's just assume that this was a case, like just a sort of plain vanilla insurance case. And the insurance company under Georgia law says we're going to reserve our rights. And the insured says, well, look, I'm not going to let you defend me then if you're going to reserve your rights. What happens after that? So under ordinary reservation of rights, the insurer would seek a declaratory judgment action. Now, it sounds like from this scenario, there's been no waiver of the conditions. And so the insured is still under the cooperation clause in the contract. It speaks directly to the issue of provides three elements to assess the cooperation clause. And I say that's important because that's important to everybody here in the room that defends lawsuits. Defending lawsuits is difficult. You have to make tactical and strategy decisions at every turn. And you have to, you know, under ordinary situation, you've got to cooperate with an insurer who has requested cooperation. And so when I say it's important, those three elements are important for measuring, hey, there are judgment calls that need to be made in defending a case. So yeah, that answered my question. I would like to ask you to address the assume and obligation language. So let's assume then that we say, okay, you know, they tried to reserve rights. You rejected that. You proceeded with the defense. Assume that we didn't view a breach. Assume instead that you were under the obligation not to assume an obligation without their permission. Why wasn't the arbitration agreement an assumption of an obligation? So there's two portions of that. I'll speak first to the arbitration as an obligation piece. There's also a waiver. Arbitration is an obligation. But the smart decision to arbitrate that was made after being told to get your own lawyer and defend yourself, did not assume the obligation to pay any judgment from defending this lawsuit, nor did it violate the cooperation with the defense clause. These insurer policies are strictly construed against the insurer and to avoid a forfeiture and provide coverage. Black's Law Dictionary recognizes that obligation is ambiguous. It has many wide and varied meanings. And one meaning of obligation is an agreement to judgment. The U.S. courthouse did not agree to liability for some certain. They contested the case at every step they could, and they agreed to a smart venue and procedural change to defend themselves after being told to do that. I mean, they agreed to participate in arbitration, right? Yes. And that comes with an agreement to pay whatever the arbitrator says decides is appropriate, right? It does come along with arbitration, but that contingent risk of a future liability finding was one that already existed. It was simply a change in who decided the case. I think this is actually a very difficult question of contract interpretation, but I'm trying to figure out, like, I think we would all agree that if you just settle the case, that's covered by this clause, right? You agree with the plaintiff, we're going to pay you $50,000 or $50 million, whatever it is, right? Yes, but the only nuance being the Durant case from the Georgia Supreme Court in 1992, where they recognized you can agree to settle the excess coverage at your own cost, that's the marginal cost of the argument, without endangering the coverage you already have for the, up to the policy limits. Yeah, and so here you've agreed, like Judge Durant said, effectively you've agreed to pay the plaintiff what a third party says you owe the plaintiff, right? That's the arbitration agreement. So, I mean, I guess I'm trying to figure out where the line is then. Is it just because it's not a specific sum? Like what, you know, it does seem very similar to a settlement with the plaintiff in the sense that you are agreeing to pay them something pending this third party's decision. Is the fact that it's a third party, like how would you draw the line between like your sort of classic settlement and then what this is, which is this arbitrator gets to decide? So, I want to start with the contract interpretation piece that you prefaced your argument with, Judge, and that is this contract already speaks directly to coverage for arbitrations under the definition of suit. That's something HDI pointed out in its response brief, and I'm paraphrasing here, but it provides something to the effect of, we will cover arbitrations to which we consent or you must submit. So the policies expressly speak to arbitration, which tells you these insurers know how to speak to arbitration directly. They've done so in their policies. They haven't done so in the conditions clauses, and they recognize that not all arbitrations have to be consented to, those to which you must submit. I would also submit to your honor that the cooperation with the defense clause is instructive here because that's the insurers, again, it's strictly construed against them. They know how to speak to the conduct of the defense, and agreeing to arbitrate is a defense strategy, and it was a defense strategy here, and it was an undisputedly smart defense strategy given the venue, the $125 million prior verdict. Although, I mean, I don't, it seems like the other side would dispute that that was smart, including, I mean, the fact that the plaintiff's verdict in the other case is obviously compelling, but there was a death in the other case, and uncertain evidence and damages here. So I'm not sure if, you can make a case that it was a smart decision, but I'm not sure it's undisputed that that was a smart decision. Your honor, HDI's appointed defense counsel, who is their agent for the defense of the case, told the insurance counsel that it was smart and better than a jury trial. There's also a document where all the, both the appointed defense counsel for the insurer and the adjuster agree to the arbitration going forward because that it was smart. That's cited in our brief. I don't have that. Yeah, here's kind of what I'm, I want your thoughts on this. So the thing about the arbitration agreement that gives me some pause that maybe it was the assumption of an obligation is that when you sign that arbitration agreement, you're no longer liable because of an underlying tort that you've committed. You're liable because of a contract that you signed, right? The whole dispute shifts from, well, we're liable because we committed this tort and we were sued and now we have to pay money, to the reason we're liable is because we agreed to arbitrate and the arbitrator said this is how you have to pay. What do you say about that? We disagree with that view, Your Honor, and here's why. When you agree to arbitrate, whether it's in the situation that was here or when you, you know, click the button on the internet and you agree to an arbitration clause, you've agreed to a different set of procedures in terms of who decides, you know, the underlying dispute, but you haven't changed the nature of the dispute. This was still a tort action. Yes, the decider was a different person, and yes, there were some procedural wrinkles, but, you know, I think if you look at the 2011, I believe it's the Concepcion case from the U.S. Supreme Court, they recognized that state law cannot treat arbitration as fundamentally different because it has these, you know, wrinkles compared to a jury trial or the federal rules of So I do not ask you to waver or fear to settle. Are there any questions about that? Well, we'll let you go way over, but we'll let you reserve your rebuttal time, Mr. Fagan. Thank you, and we'll hear from Mr. Fields. May it please the Court, my name is Paul Fields, and I represent HDI Global Specialty, SC, in this matter. I plan to argue for 10 minutes, and Ms. Nan Rigby will argue for five on behalf of the National Union. As your honors are well aware, this involves a $54 million arbitration award. There were no physical injuries that required any treatment. There were some bed bug bites that were allegedly treated with cream and some hurt legs, and that was it. But isn't it the case that your representative did say, yes, arbitration was a good idea? No. That is, there was a communication, well, there was a communication, a discussion about this matter well after the fact, in which defense counsel was talking about this matter, and defense counsel was appointed by HDI, but there was their obligation not to comment on coverage. It was their obligation to represent the insured, and that's contained in his retention letter, which is contained in the file. And he made the comment that he thought that arbitration would be a good idea, but he also said that he couldn't wait anything as far as coverage goes. This was well after the fact, and this was after the arbitration was decided. It's important to note the timing here. We disagree vehemently, and I will speak to this about the January 3rd early denial letter. That simply did not happen. The election of coverage in this matter happened on January 23rd, 2020. That's when Mr. Crawford, on behalf of P.F. Holdings and Schoolhouse, sent an email where he requested that there be a defense provided for these additional insureds. It is exceedingly important to point out, these are not named insureds under the policy. There are two named insureds, Ralston Georgian and P.F. Ralston. This is not them. These two entities are not named as additional insureds, and by that, I mean they are not listed. Sometimes you'll see insurance policies, additional insured A, B, and C. They're not listed as additional insureds. The only way that they are deemed additional insureds is because there were allegations that they were a property manager and that they were a member of an LLC. That's not listed anywhere. That's not contained anywhere. When there was a January 3rd communication between HDI's representative and defense counsel, who was appointed to represent the two named insureds, they said these other two individuals are not named insureds. They were not. They were not named insureds, and then Mr. Bradley Wolfe, who was appointed to represent them, said to the entities he was representing, I am just representing you. I'm not representing anybody else in the case. Can you address this? I don't know how. Is it Chaim Perutz? I don't know how to pronounce the name. Chaim Perutz testified that Wolfe told Perutz to get your own attorney. What do you say about that communication as a basis to waive the obligation to request coverage, express the request coverage? First off, that would be Mr. Bradley Wolfe. Bradley Wolfe was the representative, was appointed to represent those two named insureds. There's a December 18th letter from NARS reserving rights to those two named insureds, not the additional insureds we're talking about here, but those two named insureds in which they specifically say defense counsel is representing you. He will not take any action as to coverage. That record is in our briefing, but it's in the record. It's a reservation of rights from NARS. It's on page nine of that document. What this is an attempt to do is take a defense counsel who has anything to do with coverage and is deemed to represent these two entities. By him saying, I have not been retained to represent you, you should get your own lawyer, that waives something else when there has not even been an election of coverage yet by two unnamed entities that claim that they're additional insured. Why couldn't a reasonable jury reach that determination though, taking that, what you say, into consideration? Because, Your Honor, there's no evidence of a denial. There's not a denial letter. They say you get your own attorney. Why can't a reasonable jury interpret that as an election of coverage? A rejection of coverage, Your Honor? I'm sorry, a rejection of coverage. Because of the entity that's speaking, they have been told he has no authority to speak as to coverage. He doesn't represent HDI, right? I mean, he represents the insurance. If you're in an auto accident and they appoint lawyer A to represent you, his duty is to represent you. His duty is not to represent, say, State Farm. What about the claim adjuster's statement? I forget the name of the claim adjuster, but the claim adjuster made a similar statement that they were not insured, covered by the policy at the beginning of this ordeal. That was a January 3rd email, and she was speaking a fact. She did not say Schoolhouse and PF Holdings are not additional insured. She said they're not insured under the policy because that's what she's looking at. Now, let's keep in mind that PF Holdings and If you were to pick up the policy and look, you wouldn't see anywhere that they were listed. The only way that they were deemed to be additional insured is when they told us on January 23rd, we are a member of an LLC and we are the manager of the Schoolhouse for Road to States. Consequently, because of that, we should be additional insured under the policy. So let's assume that you're correct, that that's when the election of coverage happened. And let's also assume that the March 10th document contained only ordinary reservations of rights. We can get into it later whether it did or not, but let's assume that it did. Is it generally appropriate to send a complicated document on the eve of the answer being due? Because obviously you can't write an answer that morning, I assume, and get it in. To provide a real defense, wouldn't you need to offer that defense in time to actually provide it? Actually, that did occur. There was a communication on February 21st, a call, a voicemail that was left from the PF Holdings and Schoolhouses attorney, followed up by an email saying, please call me so we can communicate about this. On March 7th, there was a communication from appointed defense counsel, which he indicated that I cannot comment as to coverage. But at that point, the counsel that was deemed to represent them from the HuffPAL firm had contacted them to say, we're going to represent you. But we'd had no communication whatsoever from either of these entities. And that was because, and it's set forth very well, Mr. Crawford said, we weren't going to cooperate with them anymore. We weren't going to communicate with them. So he failed to return a phone call. He failed to return an email. He failed to do anything to allow someone to do anything. Essentially, they went quiet and they ghosted, and he decided that they were going to take it over. If you read Mr. Crawford's deposition, he said at that point, as far as we were concerned, because we, in fact, this is very important, they had agreed to arbitrate somewhere between one and eleven business days after they made their election of coverage. I say it again, one to eleven business days. What do I mean? January 23rd, they, Mr. Crawford, undoubtedly sent in, we are now electing coverage. And it's very important in that document to note, it doesn't say we're asking you to reconsider coverage. It doesn't say we're asking you to reconsider a denial. It says we wish to be providing coverage. And he then goes on to provide information to show that they will meet the status of an arbitration agreement on the 23rd of January. The arbitration agreement here says somewhere between the 27th of January, that was 23rd is a Thursday, 27th is a Monday, and the 7th of February, they had already agreed to arbitrate. There was no communication that was never advised to anybody. This was an agreement to arbitrate, leaving HDI completely out of it. They went ahead and assumed that obligation. Didn't tell anybody about it. Went as far as to send an email on February 10th, after they had already agreed to the arbitration, saying, hey, look, a Muskogee County jury is bad. They didn't tell anybody. And then there's the decision, we want to pick up your defense. We want to honor your request. Within a month of it being made, no response. Can I ask you about the assume an obligation issue? So this phrase comes in sort of the insured's have a decent argument that, look, if you're in the position of defending yourself, just assume you're denied coverage or whatever. We have to kind of assume that to get here. You've got to make decisions about how the litigation is going to progress, right? You maybe decide not to challenge venue, decide not to challenge jurisdiction, decide to remove or not remove, things of that nature. How do we draw the line between sort of just things like that, that you kind of would have to do, just kind of decisions to waive things, whatever, and then say this arbitration agreement is assuming an obligation? Do you hear my point? Like, what's the line? Your Honor, first of all, the policy specifically defines, and I want to take a second. The policy says, we will defend a suit, right? And then it defines what a suit is. And a suit is an arbitration proceeding to which the insured must submit, i.e., I assumed it in a contract, or does submit with our consent, which they didn't have. Because why? They never told us. And look at all the problems that this rose when they decided to go into and agree to this arbitration. The single arbitrator that's been chosen. This arbitrator, and it's in the record, is representing counsel for the claimants in an ongoing business relationship where he's a part owner of a company. We've given up every right of appeal. They've given up every right of appeal. They agreed to a truncated discovery process. Again, you know, no ability to determine injuries, anything. In fact, in the arbitration, there weren't even any medical expenses put in place. All these rights have been taken away. That is assuming an obligation. And I think Judge Landon, his decision at the district court, went into great detail why this was such an assumption. But the policy expressly says, you can't do this. We will agree to give you, we will defend a suit if you are, if it's an arbitration which you've got to appear for, or we consent. And there was never a request for consent. I mean, so would you distinguish that from a situation where they're, you know, they're waiting for you to make a coverage decision or something, right? And so they have to decide whether to consent to jurisdiction in a particular district court, or they have to decide whether to remove from state court to federal court. Do they get to make those decisions without assuming an obligation? Or does your view of assuming obligations is so broad that it would mean that they couldn't do those things either? I think it's a good scenario. But if you're in a case and, you know, the insurer hasn't responded, which they did here, and you would say, I want to remove the case. Okay, I want to, you should at least tell somebody, if you have somebody to communicate with, I want to remove this case. Let's move to federal court. Okay, well, you make your coverage decision. Personal counsel is going to appear and he will decide to remove the case and you'll probably have to reimburse him for his fees because if you have a duty to defend. That's not what we have here. We're in a situation, here's our election of coverage, and essentially the next day we've agreed to arbitrate and never told you about it. I know my time is up. All right. I think we have the argument. Thank you, Mr. Fields. We'll hear from Ms. Rigby on behalf of National Union Fire Insurance. So can you just start? I'm having a difficult time understanding, like, National Union just fits within this overall thing. Like, what arguments that the plaintiffs are making actually matter to you? Does that make sense? Okay. And good morning. Nan Rigby on behalf of the Appalachian National Union. We are the excess carrier in this matter. We sat above HDI's underlying policies. With respect to the issues relevant to National Union's piece of this case, this case isn't about a duty to defend. It isn't about an alleged breach of that duty to defend. It isn't about any alleged bad faith failure to settle because National Union was granted summary judgment and the appellants did not appeal that. And there's no dispute that National Union did not waive this particular policy condition. And there's really no dispute that the insureds failed to get our consent to agree to participate in binding arbitration. So the issue with respect to National Union is whether their decision to agree to binding arbitration before a single arbitrator voluntarily assumed an obligation without our consent in violation of that material condition in the policy such that they forfeited coverage under our policies. And we say absolutely yes and that Judge Land got it right. And the reason for that in responding to some of the points that have already been made, agreeing to go to arbitration is voluntarily assuming, if I said that right, agreeing to go to arbitration is voluntarily assuming an obligation because when you get named as a defendant in a lawsuit, you have no choice in that. And you have the full process of civil litigation in front of you. All the things you can do with discovery motions, a jury trial, rights of appeal. And when you agree to go to arbitration, you throw all of that away and you, as Judge Grant noted, are effectively agreeing to pay whatever the arbitrator decides. The arbitrator will be the final decision maker. There will not be any substantive right of appeal. One of the cases cited by the appellants talks about arbitration's allure is dependent upon the arbitrator being the last decision maker in all but the most unusual cases. And another one of the cases talks about agreeing to arbitrate expresses an intent to bypass the judicial system. And so here, our position is, agreeing to arbitrate is not a defense decision, to Judge Brasher's point. It's not about whether to remove or not. It's not about whether to take a particular deposition or inspect a property. It completely changes the landscape of how the case will be litigated and how a decision will be enforced. And with respect to arbitration, Georgia law gives you five really limited bases to appeal such that effectively you don't really have many rights to appeal at all. And that's what happened here. They chose not to oppose the confirmation of the arbitration award also without national union's consent. And it's a bit of circular reasoning. You know, if they'd never agreed to arbitrate, they would not have then found themselves in this extremely limited situation of having very little to no bases to oppose the confirmation of the arbitration award. Is there anything different about this insurance contract that would mean that if this were not assuming an obligation, then in any situation, a decision to arbitrate would not by agreeing to arbitrate? Is there anything that would mean that in basically every other case, though agreeing to arbitrate would not involve assuming an obligation? There's nothing, what I'm trying to say is there's no unique term here, as I understand it, that would mean that this was not a blanket rule that we would be establishing. All of these foreign languages common across the board. And to make such a decision would effectively render that provision meaningless. It would be that insureds could get sued and decide however they want to handle the case, defend the case, litigate the case, is fine. And they could- Well, more narrow, I would say that if it would essentially say that every defendant had the right to go to arbitration if they wished to, right? Without the insurer's consent, of course. No, no, no, I'm saying if we decided against you guys on this, then the rule would be that every insured who had this apparently formed contract provision would be able to go to arbitration regardless of whether the insurer consented to that or not, right? Yes, yes. We cite two cases in our brief about describing that agreeing to arbitrate is an obligation. And if you do it without the consent of the carrier, then you have violated a material condition and you forfeit coverage. And we would rely on those cases, McLean Townhomes and Bollinger. And my time is already up, unless there are any other questions. No further questions. Thank you, Ms. Rigby. Mr. Fagan. That would be a pretty significant rule, right? That anyone with this sort of contract could say that they wanted to arbitrate, even if their insurer said that they thought they would have a better defense in court? Well, that's why I think this is covered by the cooperation of the defense clause, Your Honor. Again, just in terms of contract construction here, I think the court can rule on this without getting to that substantive rule that you're talking about. And the reason I focus on the cooperation of defense clause is that it speaks directly to litigation strategy and what the insured has to do about litigation strategy to include the insurer requesting cooperation so that there is this back and forth. So you think there is something about the facts here that make this case potentially different than other cases that involve similar contract language? Absolutely. The insurers are told to defend themselves. And I'll speak to the evidence on that in addition to them being told they're not insured. And then there's other evidence of Mr. or defense. And his February 7th letter, again, confirms you've said we're not named insured, and so we don't get coverage. But back to your original question, Your Honor. These are insurance contracts, and there is clearly ambiguity in the term obligation. It's in Black's Law Dictionary. The conversation we're having here today, I think, only further highlights the ambiguity. So it's a question of whether it's a reasonable interpretation that obligation is limited to agreeing to liability for a some certain, or if you're doing something, a certain thing. That is not agreeing to a voluntary payment, as they've essentially phrased it, that by signing up for arbitration, you've agreed that you're going to back a brink truck up to pay the plaintiffs. That's not what happens. If that's what we base it on, though, then doesn't it make a rule that anyone with this obligation by agreeing to arbitration? Yes, because of the drafting deficiencies of the insurance company. The insurance companies are free to draft their policies as they see fit, and they know how to contract about arbitration. Mr. Fields confirmed that for the panel in terms of talking. So one day after our decision came out, the insurance company would just change their form contract where it says, don't assume an obligation or agree to arbitrate, right? They would just add that in. They could do that, and frankly, that would have avoided a lot of the issues here, because now they've spoken clearly to what they see arbitration as being an obligation, and that goes directly also to the waiver point that I want to follow up on, and that is HDI's appointed defense counsel is HDI's agent. We've cited the Georgia law on that in our brief, but more importantly, HDI was for arbitration before it was against it, and how do we know that? Look at the reservation of rights letters that HDI's coverage counsel sent after it knew about the arbitration. It's undisputed. HDI knew about the arbitration by March 11th. We've cited that in our brief. I've heard no disagreement. On March 30th, they sent their unilateral reservation, and it did not say clearly and unambiguously that the fact of arbitration was a basis to void coverage, and so why do I highlight that? That shows that they didn't put these insureds on notice that, hey, we see the contract this way. You can't read the face of that contract and know that arbitration is an obligation, but they had the opportunity to tell these insureds. Wouldn't that have been too late? By that point, weren't your clients, in fact, obligated to participate in arbitration? They were obligated, but it wasn't too late, and here's why. If the insurer comes to an insured and says, hey, there is a situation where you're not covered, and we're reserving rights, and it's a unilateral reservation, so if you don't accept it, you know a declaratory judgment is coming. You go to the other side. You go to the plaintiff's counsel and say, the insurer's there's no coverage because of arbitration, and then you have that conversation as the insurer with your insurance company and also the insured with the plaintiff if you've made some fatal misstep that's going to take away this incredibly valuable insurance policy you paid for for years, and so back to the waiver point. From that March 30th reservation letter that didn't, and by the way, the cases on this are both Hoover and Richmond, all the way up to the arbitration, again, HDI's appointed defense counsel was for arbitration. They were lauding it as a smart decision and defense strategy. It wasn't until just before the arbitration went that the DEC action was filed, and by that point, the right to rely on this condition was already waived. The insureds had relied on what they had received from HDI, and they couldn't change their course of action. Finally, the failure to settle issue is clearly for the jury as is 13-611. Can I ask a quick one? Just one follow-up question on the waiver issue. I think this is what you mean by the waiver issue. You have a statement from an insurance adjuster saying you're not an insured, and you have HDI's appointed counsel for the other defendant saying, I don't represent you. You need to get your own attorneys. What else besides those two statements is there in the record that suggests that there was no reason for you all to request coverage? Well, in terms of no reason to request coverage, there is evidence that the demand was sent to the broker who sent it on to the insurance company in late 2019, but in terms of not expressly requesting coverage according to the strict standards that the district court used, HDI's adjuster told private counsel for PF Schoolhouse that coverage was being denied because they were not named insureds. That's docket 6755, the Crawford deposition at page 24. And then, in addition, Mr. Crawford's letter from February 7th at docket 6722 confirms receipt of the message about the refusal to defend because they weren't named insured. All right. Thank you, counsel. Court is adjourned.